UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSEPH R. CAMPOS,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>  Defendant. | No. CV 10-9738 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are recited in the Joint Stipulation. [See JS 2]. Plaintiff alleged that he became disabled on December 29, 2005 due to back problems, leg pain, depression, and anxiety. [JS 2; Administrative Record ("AR") 40-44, 150]. In a written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") concluded that plaintiff was disabled for a closed period, from December 29, 2005 through December 29, 2006, due to a severe impairment described as lumbosacral spine

disorder status post spinal fusion. [JS 2-3; AR 15, 28-31] The ALJ found that medical improvement related to plaintiff's ability to work occurred as of December 30, 2006. The ALJ found that beginning on that date, plaintiff had the residual functional capacity ("RFC") for a restricted range of light work, in that he could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for up to 6 hours in an 8-hour work day, occasionally push or pull with his arms and legs, occasionally climb ramps and stairs, but not climb ladders, ropes, or scaffolds, and occasionally bend, stoop, crouch, kneel, and crawl. [JS 3; AR 15]. The ALJ concluded that plaintiff was not disabled beginning on December 30, 3006 because his RFC as of that date did not preclude him from performing his past relevant work as a vehicle coordinator. [JS 3; AR 36].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical improvement standard**

Plaintiff contends that in finding that his disability ended as of December 30, 2006, the ALJ erred in rejecting the opinion of Dr. Freeman of Griffin Medical Group.

Once a claimant is found disabled under the Social Security Act, a presumption of

continuing disability arises that affects the burden of production. See Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985); Mendoza v. Barnhart, 436 F.Supp.2d 1110, 1113 (C.D. Cal. 2000). Although the claimant retains the burden of persuasion, the presumption of continuing disability shifts to the Commissioner the burden to come forward with evidence to meet or rebut the presumption. See Bellamy, 755 F.2d at 1381. Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983); see also 20 C.F.R. §§ 404.1594(a), 416.994(b). "The medical improvement standard applies to cases, such as here, involving a closed period of disability." Mendoza v. Apfel, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000) (citing Shepherd v. Apfel, 184 F.3d 1196, 1200 (10th Cir. 1999); Jones v. Shalala, 10 F.3d 522, 524 (7th Cir.1993); Pickett v. Bowen, 833 F.2d 288 (9th Cir. 1987)).

"Medical improvement" is defined as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

In finding plaintiff disabled during the closed period, the ALJ noted that plaintiff sustained an injury to his low back at work in August 2002 that required extensive conservative treatment as well as spinal fusion surgery, which plaintiff underwent on February 27, 2006. [AR 28-29]. The ALJ found that during the closed period, plaintiff was unable to work a 40-hour week at even a sedentary level due to chronic pain, medication side effects, chronic fatigue, and rehabilitation following his spinal surgery, and that during this period plaintiff would have missed at least three days of work a month due to physical therapy, doctors' appointments, and hospitalization. [AR 29].

The ALJ relied in part on the opinion of plaintiff's workers' compensation treating

orthopedist, John Freeman, M.D., to find that medical improvement occurred related to the ability to work. Plaintiff contends that the ALJ selectively credited parts of Dr. Freeman's opinion that supported the ALJ's conclusions and impermissibly rejected Dr. Freeman's opinion in other respects.

Dr. Freeman initially treated plaintiff on October 23, 2003 in connection with a workers' compensation claim related to plaintiff's August 2002 on-the-job back injury. [AR 352-357]. Dr. Freeman opined that plaintiff's condition was permanent and stationary[1] in May 2005, prior to plaintiff's decision to undergo spinal fusion surgery. [See AR 436].

After the end of the closed period of disability on December 30, 2006, plaintiff saw Dr. Freeman monthly from August 2007 through December 2007, and again in February 2008, April 2008, and May 2008. Dr. Freeman recommended that plaintiff remain "off work" for most of this period. [AR 431-448].

In April 2008, Dr. Freeman issued another "permanent and stationary" report. [AR 495-502]. Dr. Freeman wrote that plaintiff's leg pain resolved after his spinal fusion surgery, but he had continued to have "persistent significant" back pain. Plaintiff was seeing Dr. Bernstein, a pain specialist, for pain management. Dr. Bernstein prescribed multiple medications, including the narcotic pain relievers Norco and oxycodone, and had administered trigger point injections in the lumbar spine which provided temporary relief. Dr. Berstein also prescribed an anti-depressant, but plaintiff had declined his doctors' recommendation that he undergo a psychiatric consultation. Dr. Freeman stated that plaintiff needed "ongoing pain management." [AR 501].

Dr. Freeman's diagnoses were status post interbody fusion and lateral fusion in the lumbosacral spine for spondylolisthesis, and depression. [AR 438-439]. Dr. Freeman stated that

---

[1] "[A] disability is considered permanent after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time. It does not mean total inability to work, but is an impairment of earning power caused by a mental or physical condition." Edgar v. W.C.A.B., 65 Cal.App.4th 1, 10 (1998) (internal quotation marks and citations omitted); see Cal.Code Regs., tit. 8, § 10152 ("A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment.").

plaintiff's objective factors of disability were decreased range of motion of the lumbosacral spine; tenderness over the low back; a well-healed, 5 inch surgical scar over the low back; positive MRI findings; electromyography and nerve conduction velocity findings positive for L5 and S1 radiculopathy; and status post surgery for an L5-S1 posterior lumbar interbody fusion. [AR 440]. He described plaintiff's subjective factors of disability as constant, moderate pain in the low back, becoming greater than moderate and occasionally severe with a minimal demand for physical effort. [AR 439]. Dr. Freeman opined that plaintiff's objective and subjective factors were consistent. [AR 440]. He opined that plaintiff's lumbar spine impairment restricted plaintiff to "semi-sedentary activities, with preclusion from prolonged sitting, standing, and walking." [AR 440]. Dr. Freemen recommended that plaintiff be provided with future medical care. [AR 440].[2]

Plaintiff returned to Dr. Freeman in December 2008. Dr. Freeman noted that plaintiff was on "permanent disability," was having trouble finding a place to live, and continued to see Dr. Bernstein for pain management for "significant severe back pain without radiation." [AR 430]. Dr. Freeman noted that he "cannot explain all of this pain" and recommended an MRI to rule out a disc problem at another level. He also prescribed medication and chiropractic treatment. [AR 430].

Plaintiff returned for follow-up a month later. [AR 416-417]. Dr. Freeman noted that plaintiff still had significant back pain and continued to see Dr. Berstein, who had given plaintiff facet epidural injections, which provided temporary relief. An MRI had been done and showed a 2-3 millimeter disc protrusion above plaintiff's fusion. X-rays indicated some instability above the fusion, which "may be causing some of his pain," prompting Dr. Freeman to recommend a back brace. [AR 417]. He also prescribed Ambien for sleep. Dr. Freeman was "unable to explain the amount of pain that [plaintiff] is experiencing over this long period of time." [AR 417]. Plaintiff exhibited low back tenderness, limitations in spinal flexion (bending forward), and zero degrees spinal extension (bending backward). [AR 416]. Dr. Freeman opined that plaintiff should

---

[2] During the hearing, plaintiff testified that his workers' compensation claim resulted in payments to him totaling between $40,000 and $60,000 and provision of future medical care. [AR 52].

remain "off work" until March 14, 2009, and he also indicated that plaintiff "remain[s] Permanent and Stationary and needs treatment." [AR 416].

At plaintiff's next monthly visit in February 2009, Dr. Freeman noted that plaintiff had experienced a flare-up of lower back pain that was "significantly interfering" with his activities of daily living. Lumbar spine motion was decreased 75% in all planes of motion with significant pain. Plaintiff moved "very slowly and guards his motions," and he exhibited muscle spasms and tenderness. [AR 415].

Plaintiff returned to Dr. Freeman for six monthly follow-up visits between March 2009 and November 2009. [AR 571-577]. During this period plaintiff had diagnoses of bilateral radiculopathy; rule out spondylolisthesis, acquired; and lumbar musculoligamentous injury. Plaintiff remained under Dr. Bernstein's care for pain management with opioids and other medication. In April 2009, Dr. Freeman signed an assessment form indicating that plaintiff could sit, stand, and walk no more than "occasionally" (defined as 2.5 hours per day) and could not perform sedentary work as defined by the Commissioner. [AR 576]. In May 2009, Dr. Freeman noted that plaintiff was "miserable with pain in his back." A discogram did not indicate the need for further surgery, so plaintiff was being "prepared for injections around the metal to see if this will stop the pain." [AR 575]. Additionally, plaintiff would be seeing his surgeon, Dr. Courfal, for consideration of removing the metal. [AR 575].

In June 2009, Dr. Freeman noted that plaintiff had restricted lumbar range of motion, positive straight leg raising test, and tenderness over the low back. Plaintiff was "still seeing a psychiatrist, who prescribed medical foods, and also was still seeing Dr. Bernstein. Plaintiff was taking Norco and Soma, a muscle relaxant. Dr. Freeman described plaintiff's pain as "severe," "extreme," "unrelenting" and "persistent," and he noted that it was "without adequate explanation" based on the clinical and diagnostic data. Plaintiff was living out of his car. Dr. Bernstein was considering a morphine pump, and plaintiff also was scheduled to see his surgeon for reevaluation. [AR 574].

On June 18, 2009, Dr. Freeman completed a state disability form indicating that plaintiff had been unable to perform his "regular and customary work" since February 6, 2005 due to his

back surgery, lumbar musculoligamentous injury, bilateral radiculopathy, and lumbar degenerative disc disease. [AR 504].

In July 2009, Dr. Freeman noted that "[n]othing had changed," and that plaintiff's "whole lifestyle had been disrupted." [AR 575]. Plaintiff was on multiple medications. Plaintiff's psychiatrist has cleared him for the morphine pump trial, and Dr. Freeman encouraged plaintiff to undergo the trial to see if he was a candidate for insertion of a morphine pump. Plaintiff was thinking about requesting a second opinion. [AR 575].

In September 2009 and November 2009, Dr. Freeman wrote that plaintiff continued to have persistent, severe back pain and was considering insertion of a morphine pump, but had requested a second opinion. Plaintiff exhibited restricted lumbar range of motion, positive straight leg raising test, and tenderness over the low back. Dr. Freeman gave plaintiff a Toradol[3] injection. Dr. Freeman added a diagnosis of "failed back syndrome." [AR 571-572].

In December 2009, Dr. Freeman noted that plaintiff had been approved to see another physician for a second opinion. Plaintiff was still seeing Dr. Berstein and a psychiatrist and was taking multiple medications, including Norco, Soma, Fentanyl patches, Ambien, and psychiatric drugs. Plaintiff was applying for social security disability. [AR 570].

The final progress note in the record from Dr. Freeman is dated May 4, 2010. Plaintiff was still having severe pain, which has shifted to the right side of the low back, causing Dr. Freeman to order a whole body bone scan to look for bone changes. Neither Dr. Freeman nor plaintiff's other doctors had been able to provide a medical explanation for the amount of pain plaintiff experienced. He remained under psychiatric treatment, which was "helpful to him." Dr. Freeman gave plaintiff a Toradol injection. [AR 569].

With respect to Dr. Freeman, the ALJ noted as follows. On January 28, 2009, Dr. Freeman

---

[3] Toradol, the brand name for ketorolac, "is used to relieve moderately severe pain, usually after surgery. Ketorolac is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation." U.S. National Library of Medicine and the National Institutes of Health, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693001.html#special-dietary (last visited Apr. 12, 2012).

- 7 -

observed that plaintiff walked normally and could bend over to the point where his fingertips were 8 inches from the floor. Just two weeks earlier, Dr. Bernstein had noted that plaintiff was in obvious distress; had difficulty standing up straight; walked with a stiff, antalgic gait; and could bend over only to the point where his fingertips barely reached his knees. [AR 34].  The ALJ concluded that "[w]hile it appears from the discrepancies between" these findings that plaintiff "has some good days and bad days, the objective medical evidence reveals minimal findings." [AR 34]. The ALJ cited an April 19, 2008 x-ray showing "mild anterolisthesis" at L5-S1, and MRI studies conducted in December 2008 showing plaintiff's spinal disc fusion, a 3 millimeter disc bulge at L4-5, and mild to moderate degenerative changes. [AR 34 (citing AR 452, 481, 485)]. The ALJ added that "[i]n light of the minimal objective findings and the ongoing pain management, [Dr. Freeman] found [plaintiff's] level of plain [sic] inexplicable. . . . [¶] Therefore, as Dr. Freeman suggests, there are no current objective findings in the medical evidence of record that supports [sic] [plaintiff's] ongoing severe physical pain complaints."  [AR 34-35].

The ALJ noted that Dr. Freeman opined that plaintiff "is limited to semi-sedentary activities, with [a] preclusion from prolonged sitting, standing, and walking," but the ALJ added that "Dr. Freeman also indicated [that plaintiff] was capable of sales, where [plaintiff] would not have to do heavy work. Obviously, when one considers the entirety of Dr. Freeman's opinion, Dr. Freeman means [that plaintiff] is capable of work [at] a level greater than sedentary (i.e. light work)." [AR 35]. The ALJ concluded that Dr. Freeman's opinion was consistent with the ALJ's conclusion that medical improvement occurred restoring plaintiff's ability to work as of December 30, 2006. [AR 35].

The ALJ also said that he gave "no weight" to Dr. Freeman's January 28, 2009 statement that plaintiff should remain "off work" for about six weeks and his June 18, 2009 certification that plaintiff could not perform his "regular and customary work." The ALJ explained that those statements were made in the workers' compensation context and were "inconsistent with other statements made by Dr. Freeman . . . ." [AR 36]. The ALJ also relied on the conflicting opinions of the Commissioner's consultative orthopedist, Dr. Yu, and the non-examining state agency physician. [AR 35].

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);. Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).[4]

The ALJ's evaluation of Dr. Freeman's reports is problematic in several respects. The fact that two treating physicians with different specialties made different examination findings on examinations that were conducted about two weeks apart does not, standing alone, create "discrepancies" in the medical record because those differences may be attributable to differences in plaintiff's clinical presentation on those dates.

In addition, the ALJ concluded that these "discrepancies" meant that plaintiff had "good days" and "bad days," but nothing in Dr. Freeman's reports after December 30, 2006 can reasonably be construed as describing "good days." Rather, Dr. Freeman consistently indicated that plaintiff had "severe," "persistent," "unrelenting," and "extreme" lower back pain. Dr. Freeman repeatedly acknowledged that the clinical and objective data did not "adequately explain" the severity of plaintiff's lower back pain, which, unlike plaintiff's lower extremity radicular pain, was not alleviated by spinal surgery. Dr. Freeman never said that there was *no* objective medical basis for the existence of some degree pain. [See, e.g. AR 440 (objective factors of disability)]. Rather, he said that he could not explain the amount or severity of plaintiff's pain. Dr. Freeman, however, never found or suggested that plaintiff was malingering or magnifying his pain. On the contrary, Dr. Freeman indicated that he believed plaintiff's pain complaints and took them very seriously.

---

[4] The Commissioner contends that under his regulations, which are "entitled to deference," an ALJ "must give good reasons" supported by substantial evidence for rejecting or discounting a treating physician's opinion, and that "[t]o the extent the Ninth Circuit's judicially created standard exceeds the requirements set forth by Congress and by the Commissioner at Congress's behest, it is improper." [JS 7]. This Court, however, is bound by Ninth Circuit law, and therefore the merits of the Commissioner's contention are not addressed.

For example, Dr. Freeman referred plaintiff to Dr. Bernstein for intensive pain management beginning in March 2008, and Dr. Bernstein continued to treat plaintiff approximately monthly through June 2010, the date of the most recent progress report in the record. Dr. Bernstein's progress reports document abnormal signs and symptoms, including plaintiff's "obvious distress," difficulty standing up straight, tenderness, muscle spasm, limited flexion of the spine, zero degrees of extension of the spine, positive straight-leg raising test, and positive findings on lumbar spine MRI. [See AR 390-412, 418-480, 486-494, 505-568]. He utilized an array of pain management therapies, including narcotic pain relievers, muscle relaxants, topical analgesic creams, sleep aids, facet injections, epidural steroid injections, posterior pedicle screw hardware block, and a trial of neuraxial opiate medication (morphine) on an inpatient basis. [See, e.g., AR 510-511, 525-526, 530-531, 534-536, 540–541, 551, 562-563]. Dr. Bernstein obtained a psychological evaluation and testing to rule out malingering and to show that the pain was organic. [AR 551, 558].

In addition to referring plaintiff to a pain specialist, Dr. Freeman prescribed pain medication and chiropractic treatment. [See, e.g., AR 430, 569]. Dr. Freeman also recommended a plethora of diagnostic procedures, including imaging studies, a discogram, and bone scan, in an ongoing attempt to determine the cause of plaintiff's pain. [AR 430, 569, 574, 577]. Ultimately, he diagnosed "failed back syndrome."[5] [AR 569-575]. Dr. Freeman referred plaintiff to a psychiatrist, who prescribed psychotropic medication. [See AR 417, 569, 571]. Dr. Freeman requested a second opinion by another physician, which did not result in any change in plaintiff's treatment. [AR 569-571]. Therefore, while Dr. Freeman may have found the severity of plaintiff's pain "inexplicable," his reports as a whole do not support the inference that plaintiff's pain complaints had no objective basis or were not credible.

The ALJ interpreted Dr. Freeman's April 2008 permanent and stationary report to mean

---

[5] "After any spine surgery, a percentage of patients may still experience pain. This is called failed back or failed fusion syndrome, which is characterized by intractable pain and an inability to return to normal activities." Cedars-Sinai, For Patients, Health Conditions, Failed Back and Failed Fusion Syndrome, available at http://www.cedars-sinai.edu/Patients/Health-Conditions/Failed-Back-and-Failed-Fusion-Syndrome.aspx (last accessed Apr. 13, 2012).

that plaintiff could "work a level greater than sedentary (i.e. light work)," and concluded that Dr. Freeman's opinion was consistent with his RFC finding describing a restricted light range of light work.  In his April 2008 report, Dr. Freeman said that plaintiff was restricted to "semi-sedentary activities, with preclusion from prolonged sitting, standing, and walking." [AR 501].  He also advised plaintiff to try "some kind of work, such as sales, where he would not have to do heavy work." [AR 500].

A limitation to "semi-sedentary" work means doing work "approximately one half the time in a sitting position, and approximately one half the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting." Glass v. Workers' Comp. Appeals Bd, 105 Cal. App. 3d 297, 302 n.1 (1980) (explaining the California workers' compensation work restriction classifications). The workers' compensation guidelines do not define what is meant by a prohibition against "prolonged" sitting, standing, or walking, but the Ninth Circuit has held that a person who was found unable to tolerate prolonged sitting or standing in the workers' compensation context could not sit for six to eight hours a day or perform "any type of sedentary work." Vertigan v. Halter, 260 F.3d 1044, 1048, 1052 (9th Cir. 2001).  Under Vertigan, Dr. Freeman's opinion is not consistent with the ALJ's finding that plaintiff can stand or walk for up to 6 hours in an 8-hour work day. Dr. Freeman's remark that plaintiff should work in sales to avoid "heavy" work does appear to be inconsistent with his stated work restrictions, but that casual observation lacks the weight of his formal finding regarding plaintiff's work restrictions.

The ALJ also rejected Dr. Freeman's January 28, 2009 statement that plaintiff should remain "off work" for about six weeks because it was inconsistent with other statements made by Dr. Freeman (apparently referring to the April 2008 permanent and stationary report), and because it was a workers' compensation opinion. [AR 36].   Dr. Freeman recommended that plaintiff remain "off work" for most of the period between August 2007 and April 2008, when Dr. Freeman issued his April 2008 permanent and stationary report.  When plaintiff returned for treatment in December 2008, Dr. Freeman wrote: "His problem is significant severe back pain without radiation.  I have written a previous permanent and stationary report on him, but he has never gotten any better." [AR 430].  This entry, which indicates that Dr. Freeman had doubts about

plaintiff's "permanent and stationary" status, provides the proper context for his January 2009 opinion that plaintiff's conditioned had worsened such that he was temporarily totally disabled until March 14, 2009. [AR 416].

Then, in April 2009, Dr. Freeman completed a form indicating that plaintiff was "100% disabled" and could perform "no work" because he could sit, stand, or walk for only 2.5 hours a day for each activity. [AR 576]. Therefore, Dr. Freeman's January 28, 2009 temporary disability opinion was not materially inconsistent with other contemporaneous statements made by Dr. Freeman, and the use of workers' compensation terms does not justify rejecting his opinion because he also described plaintiff's limitations in terms that are compatible with social security disability standards.

The ALJ erred in failing to provide legitimate reasons, supported by substantial evidence, for his evaluation of Dr. Freeman's treating source reports and opinions, and in relying on that evidence to establish medical improvement related to plaintiff's ability to work.

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected the alleged severity of plaintiff's subjective excess pain complaints. Because the ALJ's credibility finding rested in significant part on his erroneous evaluation of the medical evidence [see AR 32-35], his credibility finding cannot stand.[6] See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989) (stating that "[t]he ALJ's assessment of the claimant's credibility [is] exceptionally important in excess pain cases," which "often hinge entirely on whether or not the claimant's description of what he is feeling is believed.").

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further

---

[6] The ALJ's credibility analysis also contains citations to the record that are inapposite. For example, the ALJ cites Exhibit 2F, page 25, which is a redacted page that pertained to another claimant. [See AR 34, 358]. The ALJ also cites Exhibit 8F, page 5 as evidence of plaintiff's condition on December 25, 2007, but the cited exhibit is dated September 29, 2008. [AR 34, 394].

proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further administrative proceedings is the appropriate remedy because outstanding issues remain to be resolved before a determination of disability can be made, such as whether a proper evaluation of Dr. Freeman's workers' compensation reports warrants a finding that plaintiff was disabled after the end of the closed period, and if so, the starting date and duration of any additional period of disability. On remand, the Commissioner is directed to offer plaintiff a supplemental hearing and to direct that a new hearing decision be issued containing appropriate findings.

///
///
///

**Conclusion**

For the reasons described above, the Commissioner's decision is **reversed,** and the case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED**

April 13, 2012



_____
ANDREW J. WISTRICH
United States Magistrate Judge